BUTTERFIELD LUMBER COMPANY *v.* GEORGE W. GUY.

[45 South., 78.]

1. EQUITY. *Improvident contract. Relief.*

Equity will not relieve a party from his contract because improvidently made.

2. LANDS. *Sale of standing timber. Fee simple title.*

A sale of standing timber conveys an interest in realty, and the owner of land in fee may convey to another a fee simple title to the timber standing thereon.

3. SAME. *No limit for removal. Implication.*

The owner of land in fee, who by warranty deed conveys the timber standing thereon, together with the right to enter and remove the same, without limiting the time for its removal, is not entitled to a cancellation of the deed because the land is useless to him as long as the timber remains thereon and the purchaser has failed to remove the timber in a reasonable time.

FROM the chancery court of Lincoln county.

HON. G. GARLAND LYELL, Chancellor.

Guy, appellee, was complainant in the court below; the lumber company, appellant, was defendant there. From a decree overruling a demurrer to the bill of complaint the court below granted, and defendant prosecuted, an appeal to the supreme court.

The deed the construction of which was involved is as follows:

"State of Mississippi, Lincoln county. In consideration of the sum of two hundred dollars cash in hand paid, the receipt of which is hereby acknowledged, we convey and warrant to the Norwood & Butterfield Company all the green pine timber on the following described land, to-wit: The N. E. ¼ of S. W. ¼, and N. ½ of S. W. ¼ of S. W. ¼, and N. ½ of S. E. ¼ of S. W. ¼, section 36, township 5, range 9 east, containing eighty acres solid

timber, situated in the county of Lincoln, state of Mississippi. We further convey the right to enter upon said land with log carts and log wagons to remove said timber off said land. We further convey and warrant to said company a right of way one hundred (100) feet wide on, through, and across the N. E. ¼ of S. W. ¼, section 36, township 5, range 1 east, to be laid off at will and pleasure of said Norwood & Butterfield Company. Witness my signature this 15th day of March, A. D. 1892. G. W. Guy. Victoria Guy."

*Mayes & Longstreet,* for appellant.

Where a deed to timber standing on a certain piece of land is duly executed, and where such deed does not, by its terms, fix any definite time within which the timber shall be removed, there is no implication or presumed intention of the parties that such timber shall be removed within a reasonable time.

Where parties by their contract have fixed a definite time within which the timber shall be removed, the contract made by them, on its face, negatives the idea that the purchaser of the timber shall have such time as he shall please; and to hold that he takes an indefinite time would be to contradict the very terms of the instrument of contract.

In this class of cases, the court will find that there has been a diversity of view as to the consequence of the lapse of the time fixed where the timber has not been removed; some cases including *Clark* v. *Lumber Company,* 90 Miss., 479, 43 South., 813, holding that the title to the timber is thereby forfeited and reverts to the land owner; while other cases hold that the title to the timber notwithstanding, remains in the purchaser, but that the purchaser cannot go on the land to remove this timber without committing trespass quare clausum because his license to enter has expired by its own limitation.

With that diversity of view, we are in this matter in no wise concerned, because our contract is not in those terms.

The investigation of the question involved illustrates very

forcibly an evil from which the bar and the courts of this more recent period suffer much. This evil is the creation of a line of fallacious and unsound authority by and through the hurried, slipshod, and inaccurate work of text book writers and legicographers. By reference to this topic in the text books, in the Encyclopedia of Law, and in the elaborate notes to the case of *McRae* v. *Stilwell*, 55 L. R. A. 513, one would think that, naturally, a view has been obtained of the field of authority, and that a doctrine had been found therein stated which was true and reliable. Some of the cases, proceeding on that idea, have followed what those writers, lexicographers and commentators have stated to be the rule; and thereby the vice and the defect of their treatment of the subject have crept into some of the decisions, through hurried and misled work on the part of the judges.

The truth is that in all those books the balance of authority on the proposition under discussion has been struck, and the rule on the subject announced by those writers, without their having ever found what we consider to be, and submit to be, the leading and controlling cases on the subject. They are not cited in any of those notes; and, as a consequence, those writers have stated that to be the rule, which, we submit, is the reverse of the true rule.

Moreover, in many instances, they have cited as authority cases of the class mentioned by us above, where there was an express limitation of time fixed by the terms of the contract.

Another preliminary consideration needs to be noted. In some of the states, the fundamental holding on the contract for the sale of timber, is that the contract does not convey a title vested in the purchaser to real estate; but only conveys a license to enter and sever which being done, the title of the purchaser then vests in and as to personal property.—Of course a decision as to the effect of such a contract, on the point as to whether such entry and severance must be within a reasonable time, or may be made indefinitely, has no relation to, and cannot effect,

that question when it arises in a state like Mississippi in which the holding is well settled, as a rule of property, that such a sale vests a present interest in fee to a part of the realty.

Again: another distinction needs to be considered. In some of the states, the fundamental holding of a timber contract is that the sale is made on a condition subsequent; the condition being that there shall be an entry and severance; and no title attached to the timber until that condition is fulfilled.

Neither are the decisions rendered in those states applicable in Mississippi, where it is settled that a contract for the sale of timber does not occupy that attitude, but is, as above stated.

The rule in Mississippi in regard to the effect of a written contract by which the timber on a piece of land is sold, is perfectly well settled by a series of decisions; and it will be observed that this state has gone quite as far as any of the states in upholding and enforcing the title of the vendee. *McKenzie* v. *Shows,* 70 Miss., 388, 12 South., 336.

Please note that in the case of *McKenzie* v. *Shows* it was claimed by McKenzie's counsel that although the deed by the husband might be void as against the present homestead interest, it still had legal operation to vest an interest in reversion expectant on the termination of the homestead estate (see brief of R. H. Thompson, page 389) ; but this view also the court denied, declaring that "There is no estate in reversion expectant upon which appellants can enter upon the proper sale of the homestead by the husband and wife jointly, for the reason that the attempted conveyance and incumbrance of the husband alone in the sale by deed of the timber, was absolutely invalid to convey any right or title." *McKenzie* v. *Shows, Supra; Walton* v. *Lowrey,* 74 Miss., 484, 487, 21 South., 243 ; *Fox* v. *Lumber Co.,* 80 Miss., 1, 31 South., 583.

We have no case in this state as yet on the precise application of the rule in the aspect now under consideration. But, as shown above, it is settled, and settled as a rule of property, that a timber sale, where the deed is properly executed, is in

this state the sale of a present vested interest in land, and that interest separate and undivided.

There are several authorities in other states which we will now call to the attention of the court. *Howard* v. *Lincoln,* 13 Me., 122; *Goodwyn* v. *Hubbard,* 47 Me., 596; *Gregg* v. *Birdsall,* 53 Barb., 402; *Knotts* v. *Hybrick,* 12 Rich. L. (S. Car.), 314; *Dils* v. *Hatcher* (Ky., 1902), 69 S. W., 1092; *Lumber Co.* v. *Cornett* (Ky., 1901), 63 S. W., 974; *Hogg* v. *Frazier* (Ky., 1902), 70 S. W., 291; *Wait* v. *Baldwyn,* 60 Mich., 622; *Smith* v. *Furnish,* 68 N. H., 123, 47 L. R. A., 226; *Magnetic Ore Co.* v. *Marbury Lumber Co.,* 104 Ala., 465; 27 L. R. A., 434.

The case of *Gex* v. *Dill,* 86 Miss., 10, 38 South., 193, does not affect this question. It is true that in that case the court made some observations about the vendee of the turpentine right having a reasonable time in which to begin his work under a deed which did not by its terms fix any period for his beginning. But the court did not adjudicate that such was the proper construction to be placed upon that deed. On the contrary, the court very carefully guarded against that proposition. It said:

"We have examined all the authorities given in the briefs of counsel. Under them we think the most that can be claimed, if it can be, is that the work must commence in a reasonable time; and in this case we think it commenced in a reasonable time."

*Green & Green,* on the same side.

Under the decisions of this State it is settled that timber is a separate portion of the realty, and that the owner can carve out distinct and separate estates in fee to each of these which may co-exist. *Hall* v. *Gardiner,* 89 Miss., 609, 43 South., 2; *Fox* v. *Lumber Co.,* 80 Miss., 1, 31 South., 583; *Walton* v. *Lowrey,* 74 Miss., 484, 21 South., 243; *McKenzie* v. *Shows,* 70 Miss., 338, 12 South., 336; *Harrell* v. *Miller,* 35 Miss., 701.

The timber being a separate portion of the fee, the owner of the entire fee divided it into two distinct parts and retains one portion, while he conveys the other.

Appellee was grantor, appellant, grantee, and the words used are those of the grantor, and if there be room for construction, that construction will be adopted which is favorable to the grantee, this being a deed poll. 2 Min. Ins., 1058; *Greenwood* v. *Ligon,* 10 Smed. & M. (1848), 617; 17 Am. & Eng. Ency. of Law (2d ed.), 14.

The estate granted in the timber is in fee, and being in fee the time wherefor it endures is fixed and defined under the law. An estate granted in fee has the time of its duration determined so that there can be no implication of other or different time than that created by contract of the parties. *Stockey* v. *Butler,* Hob. (1699), 300; *Clapp* v. *Draper,* 4 Mass. (1808), 267; (Parsons, Chief Justice); *Putnam* v. *Tuttle,* 10 Gray (Mass., 1857), 48; *Jones* v. *Lumber Co.,* 99 S. W. (Tex., 1907), 736; *Lumber Co.* v. *Taylor,* 98 S. W. (Tex.), 239; *Zimmerman* v. *Daffin,* 42 So. (Ala., 1907), 860; *Ore Co.* v. *Lumber Co.,* 104 Ala. (1894), 470; *Walker* v. *Johnson,* 116 Ill. App., 145; *Shenandoah Land, etc., Co.* v. *Clarke,* 55 S. E. (Va., 1906), 561; *North Georgia Co.* v. *Bebee,* 57 S. E. (Ga., 1907), 874; *Johnson* v. *Truitt,* 40 S. E. (Ga. 1905), 136; *Baxter* v. *Mattox,* 106 Ga. (1898), 344; *Patterson* v. *Graham,* 164 Pa., 381; *Knotts* v. *Hydrick,* 12 Rich L. (S. C., 1859), 314; *Howard* v. *Lincoln,* 13 Me. (1836), 124; *Goodwin* v. *Howard,* 47 Me.; 595; *Peterson* v. *Gibbs,* 81 Pac. (Cal., 1905), 121; *Irons* v. *Webb,* 41 N. J. L. (1879), 204, (Chief Justice Beasley); *Mathews* v. *Mulvey,* 38 Minn. (1888), 342; *Alexander* v. *Bauer,* 102 N. W. (Minn., 1905), 388; *Gregg* v. *Birdsall,* 53 Barb. (N. Y., 1866), 405; *Peace* v. *Gibson,* 6 Me. (1829), 83; *Davidson* v. *Moore,* 37 S. W. (Ky., 1896), 260; *Liford's Case,* 11 Coke, 46; *Hall* v. *Lumber Co.,* 94 S. W. (Ark., 1906); *Halstead* v. *Jessup,* 150 Ind. (1897), 87; *Adkins* v. *Huff,* 58 W. Va., 645; *Mining Co.* v. *Cotton Mills,* 143 N. C. (1907), 308.

Whosoever grants a thing is supposed also tacitly to grant that without which the grant itself would be without effect. Broom's

Lcg. Max., 7 Ed., 478.   As said by Mr. Minor (2 Ins., 19):
"Way of necessity arises not otherwise than as an incident to. a
grant of land surrounded wholly by that of the grantor, when
otherwise the land granted would not be accessible, and the gran-
tee would derive no benefit from the grant.    It is an instance of
the maxim  . . . . that one is always understood to intend, as in-
·cident to the grant, whatever is necessary to give effect thereto,
which is in the grantor's power to bestow.   *Cuicunque aliquis
·quid concedit, concedere videlur et id sine quo res ipsa non
potuit.   Liford's Case,* 11 Co., 52a ; *Pomfert* v. *Ricroft,* 1 Wms.
Saund., 322 b. n., 5 and 6; Broom's Max., 362, 366; 2 Bl.
Comm., 36 and note; 1 Lom. Dig., 675 ; *Gayetly* v. *Bethune,* 14
Mass., 55 ; *Nicholls* v. *Luce,* 24 Pick., 102 ; *Kimball* v. *Coehees
R. R.,* 27 N. H., 448 ; *Linkenhoker* v. *Graybill,* 80 Va., 838."

*Cassedy & Cassedy,* for appellee.

Among other things admitted by the demurrer is the allega-
tion of the fact that a reasonable length of time has expired,
and also that the loss of the use of the land to appellee largely
exceeds in amount the value of the timber since the reasonable
time has expired.

In arriving at a correct construction of the deed, of course it
will be necessary for the court to take into consideration the
·conditions and surroundings of the parties as evidenced by the
bill and the instrument of writing itself, and in doing this the
court will readily see that Guy for his purpose and use sought
to restrain all interest in the land.   Therefore, in so far as the
land concerned, the only right as to this given the appellant
was the license to go upon it with wagons, etc.—distinguished
from any title in the land—only the right to go upon it.

Now, the land being of value only for cultivation, it must
be concluded that for this purpose it was retained.

And the appellant having purchased only the green pine tim-
ber, and having purchased only the right to go on the land to
get such timber, it must be concluded that the parties antici-

pated that it was to be severed from the ground. The only value of such timber is its use when manufactured into lumber. It must be concluded again that it was for this purpose such timber was purchased.

The court will further see that it is set out in the written instrument that it is "solid timber." It is charged in the bill and therefore admitted that this timber left on the land absolutely destroys it for cultivation and that the value of the use thereof exceeds the value of the timber.

If no interest in the land as such was conveyed—except the right to go upon it—as set out in the instrument, then Guy was entitled to the use of the land, and appellant had no right to so use his interest—by delay or otherwise—as to destroy the interest of Guy, the one under the law being as much property and the subject of protection as the other.

If no interest in the timber is retained in Guy, then he had no right to so use the land as to destroy the value of the timber, the right of such being property and should be protected.

The most that can be said of this instrument is that the title to the green pine trees was conveyed, and that only a simple license was given to the purchaser to enter the land, sever the timber, and remove the same from the land. The property conveyed in the contemplation of the parties was personal, being the timber situated upon the land described, and the necessity of the license to enter and cut was simply to carry out this intent so that a physical cutting could be done by the purchaser, and the property bought be received.

In the cases of *Harrell* v. *Miller,* 35 Miss., 701, *McKenzie* v. *Shows,* 70 Miss., 388, 12 South., 336; *Walton* v. *Lowrey,* 74 Miss., 484, 487, 21 South., 243, a different proposition was decided from the one here presented. In each of them the question involved was the validity of a conveyance—one being a parol sale of growing timber in violation of the statute, and the other an undertaking by the husband alone to convey growing timber on the homestead in violation of another

statute.  Each of these cases presented only the question of the validity of the conveyance, and in no way presented to the court the question of construction as to what was conveyed and how the instrument, as between the parties having full authority to make the same, should be considered when they contemplated the timber should be severed, and where the interest in the land involved was only "The right to go on it with wagons, etc." And the same may be said of the case of *Fox* v. *Lumber Co.,* 80 Miss., 1, 31 South., 583.  In this case, the question involved was between the state upon the one side and the lumber company on the other on the question of taxation, and was not a question between the parties involving a construction as between them of the instrument so as to determine what was conveyed.

The court will note it is not contended by the appellee that there may not be several ownerships in the same land by different parties at the same time.  It is recognized that one may own the mineral beneath the surface, another the surface, and another the growth upon it, and another the building, etc., and that instrument of title may be so worded (except as in violation of statute of public policy) as to convey an interest in perpetuity and that all such interests will be an ownership in land.

The question in this case is, Was any such interest created in this conveyance.

It is admitted by every court of every state and every law book in print that houses and standing timber and the like are a part of the realty, and that a right to go upon land with wagons, etc., is an interest in realty, and that all of this and more is embraced in the term "land," yet we assert that where a building (being at the time a part of the real estate) is sold and conveyed and the title thereto warranted, the right to leave it standing upon the land is not given in the conveyance, but to the contrary where it is provided in the instrument that the purchaser shall have the right to enter upon the land with wagons, etc., to remove the building, in that case, the house was disposed of as personal property, and the only interest given in the land

was the license to enter and get it, and for the same reasons Code 1880, §§ 1231, 1232, and the provisions of the existing statute do not apply, for the reason that all the statutes refer to land, and in this case the trees conveyed were treated by the parties as personal property, and the interest in the land. "The right to go on it with wagons, etc., is treated in a separate clause in the conveyance given. If such sections have any reference to the trees as claimed, then it can only be to the title to the trees, and cannot apply to the question of the right of entry on the land. It being the intention of the parties that the trees should be severed from the land, it cannot therefore be urged that a perpetual right of entry for the purpose of removing necessarily follows as a matter of course, simply because appellant may own a title in fee to the timber claimed to have been conveyed.

The claim of the appellant for an unlimited length of time to let the timber stand and grow on the lands of the appellee, and for an unlimited length of time to enter and cut timber from the lands of appellee, thus preventing the appellee from putting his lands to any use, and causing him to lose more than the value of the timber, is without consideration or agreement, appropriating the property of the appellee to the use of the appellant, and that this is a cloud on appellee's title to the ownership of the land and all interest therein, and this contention of the appellee for the right to cancel the claim of the appellant to the right of entry upon his land for the purpose of cutting said timber is not based upon a condition subsequent or upon the forfeiture to be declared by the court. The proposition is the right to entry given appellant was only for a reasonable length of time, and has been received, and that to that extent the instrument has accomplished its purpose, and the appellant is now urging it to the hurt of the appellee in that it is making false claims to interest in appellee's property inconsistent with the absolute ownership of the land.

Along this line, this court has recently decided two cases, the first being that of *Gex* v. *Dill,* 86 Miss., 10, 38 South., 193, and the second *Hall* v. *Gardiner,* 89 Miss., 588, 43 South., 2.

In the following cases it was decided that where timber was conveyed naming the time in which it was to be removed, that after the expiration of such time, the title to such timber reverts to the owner of the land: *Bunch* v. *Elizabeth City Lumber Co.,* 830 N. C., 131, 42 S. E., 1040; *Mill* v. *Elliott,* 43 S. E., 173, 52 W. Va., 229; *Baxter* v. *Maddox,* 32 S. E., 94; *Weber* v. *Proctor,* 36 A., 631, 89 Me., 404; *Bunbb* v. *Dresser,* 42 Mass., 271, 35 Am. Dec., 364; *Green* v. *Bennett,* 23 Mich., 464; *Gambrell* v. *Gates,* 97 Mich., 465, 56 N. W., 855; *McComb* v. *Detroit L. & N. R. Co.,* 108 Mich., 491, 66 N. W., 376, 62 Am. St. Rep., 713, 32 L. R. A., 102; *Macentire* v. *Barnard,* 1 Sandf. Ch. 22; *Strasson* v. *Montgomery,* 32 Wis., 52; *Pease* v. *Gibson,* 6 Me., 81; 12 Am. & Eng. Enc. Law (1st ed.), 1031, note 4.

Where no time is named in the deed in which the timber is to be removed, then under the law, the grantee has only a reasonable time to enter and cut, and at the expiration of such time, on the same doctrine as when time is named in the deed, the title to the timber is forfeited and becomes the property of the owner of the land, the reasonable time to be removed being the time fixed as if written in the deed. *McRea* v. *Stillman,* 110 Ga., 65, 55 L. R. A., 513. This case in the notes cites a large number of the authorities, and in the summary the writer says there are very few cases holding a different doctrine. See also, *Allison* v. *Wall,* 49 S. E., 831, 121 Ga., 823; *Bunch* v. *Elizabeth Lumber Co.,* 46 S. E., 24; *Carson* v. *Three States Lumber Co.,* 69 S. W., 320; *Union Tanning Co.* v. *Shug,* 22 Pa. Co. Ct. R., 647, 68 N. H., 10; *McRae* v. *Stillwell,* 36 S. E., 604, 111 Ga., 65; *How* v. *Batchler,* 49 N. H., 204; *Warren* v. *Leland,* 2 Barb., 1613; *Matthews* v. *Mulvy,* 38 Minn., 342, 37 N. H., 794.

MAYES, J., delivered the opinion of the court.

On March 15, 1892, George W. and Victoria Guy, for a consideration of $200, receipt of which is acknowledged, conveyed to the Norwood & Butterfield Lumber Company by warranty deed all the green pine timber on a certain tract of land, which is described in the deed. The Norwood & Butterfield Lumber Company subsequently conveyed this timber to the Butterfield Lumber Company; hence this suit against it. In 1906, Guy brought this suit in the chancery court of Lincoln county, praying that the title of the lumber company under the deed be canceled. It is alleged in the bill that the lumber company, under the deed, only obtained title to the timber on condition that it cut and remove same from the land in a reasonable time. It is also alleged that the lumber company had long since been notified to cut and remove the timber, but had not done so, and more than a reasonable time had elapsed within which it had the right to cut the timber, and, having failed and refused to do so, its right is forfeited. It is also alleged that Guy is the owner of the land on which the timber stands and is nourished, that the land is useless to him so long as the timber is permitted to stand there, and the right asserted by the lumber company to go upon the land and cut the timber whenever it might choose to do so, together with the deed which they have to the timber, casts a cloud on his title, and he claims the right to have the deed canceled. In the deed no such rights as are set forth in the bill of complaint are to be found. The deed is a simple conveyance by warranty in fee simple of the timber, without time limit or conditions. In every essential necessary to convey a fee interest in the trees, the deed conforms to the requirements of the statutes.

The relief sought by complainant's bill is without authority; but we think it untenable and against right. No topic in the law has been the subject of a greater variety of decisions than the one involved in this suit. Each case, in a large measure, must rest on the interpretation of the particular contract under which

it arises, since nearly every contract contains different terms. We can derive little benefit by a resort to the authorities of other states, because of the conflict of decisions. The only safe rule for this court to follow is to give effect to the contracts which the parties themselves have entered into, interpreted according to the law of this state as shown by former decisions dealing with this character of deed. The precise question presented has never been decided in this state. No ground for equitable relief is shown by the mere fact that the party invoking the aid of the court has made an improvement contract. There must be something more than this before there is any ground for equitable relief. An examination of the authorities leads us to the conclusion that the confusion which has come into the law upon this subject arises out of the fact that these contracts have been held in some states to convey chattel interests, and in others to vest an interest in the realty. Many states hold that a valid contract for the sale of timber can be made by parol, being a sale of personal property. The earlier cases seem to be to this effect, and hence by those courts which followed this line of authority it was held that where there was a sale of timber, with no time specified for the removal, it being a sale of personalty merely, and not an interest in the realty, there was an implied condition on the part of the seller and purchaser that the timber should be removed within a reasonable time.

Since the case of *Harrell* v. *Miller,* 35 Miss., 701, 72 Am. Dec., 154, it has been uniformly held in this state that the sale of timber conveyed an interest in realty. In the case of *Harrell* v. *Miller,* on the question of whether or not the sale of growing trees is a sale of an interest in land or a mere chattel, it is said: "Upon this subject there is much diversity of opinion, both in the decisions in England and in this country. Several of these decisions from highly respectable sources hold growing trees to be mere chattels, and that contracts for the sale of them are not within the statute. But many other cases hold this to be parcel of the land, and within the statute; and this opinion

appears to be more in accordance with principle and established legal distinctions." To the same effect is the case of *McKenzie* v. *Shows,* 70 Miss., 388, 12 South., 336, 35 Am. St. Rep., 654. In the case of *Fox, Tax Collector,* v. *Pearl River Lumber Company,* 80 Miss., 1, 31 South., 583, this court said: "Trees are a part and parcel of the land upon which they are growing or standing; for the term 'land' embraces, not only the soil, but its natural productions, and trees growing or standing upon land are not distinguishable in their character of real estate from the soil itself until they are actually severed from the soil. By the common law, also, several sorts of estates or interests, joint or several, may exist in the same fee, as that one person may own the ground or soil, another the structures thereon, another the minerals beneath the surface, and still another the trees and wood growing thereon." It is thus seen, from the former decisions of this court, that while it is recognized that there may be different ownerships in real estate, according to its different character, trees, land, etc., yet the fact that its ownership may be diverse does not change its character as real estate until actually severed. This being the case, a fee-simple title can be made in one character of real estate as well as another. It was as lawful and binding to make a fee-simple title to the trees forming a part of this land as it would have been to make a deed to the entire real estate, including the land.

No question of public policy is involved in this deed, so as to avoid it. The owner of the land was the owner in fee, and he might carve it up into as many different sorts of estates as the land was susceptible of, and make a good and valid deed in fee simple to each. If he has done so, and finds it inconvenient or improvident, the courts will not destroy the property rights of his vendees in order to relieve him from his own improvidence. In the case of *Magnetic Ore Co.* v. *Marbury Lumber Company,* 104 Ala., 465, 16 South., 632, 27 L. R. A., 434, 53 Am. St. Rep., 73, it is held that "a conveyance without condition or

reservation of the saw timber standing on certain land vests absolute title in the trees, independent of the land itself, and such title is not lost or forfeited in favor of a subsequent grantee of the land, whose deed contains an express reservation of such trees, by the fact that they were not severed within a reasonable time." And the court further said that, before it should be held that timber should be removed within a reasonable time, where a purchaser obtains a deed to it without condition or reservation as to the time within which it shall be removed, there ought to be some cogent reason compelling such a conclusion or decision, so strong as to amount to an established rule of property, before such contention should be adopted as the law. We can put our view of this case in no more succinct form or in stronger language than is used in the Alabama case above cited. In the case of *Hall* v. *Gardiner,* 89 Miss., 588, 43 South., 2, a consideration of the question presented here was expressly pretermitted. The court said: "We propose to decide, in this case, nothing except what this instrument presents for decision. This is not the case of a grant by A., owning both the land and the timber thereon, of the timber in fee simple, without qualifications. We will construe that sort of instrument when the case arises. This is not the case of a deed giving the grantee as long as he wishes in which to remove the timber, nor the case of a deed giving the grantee the right to commence cutting when he pleases. This instrument is peculiar in its terms and express in its provisions." The case of *Gex* v. *Dill,* 86 Miss., 10, 38 South., 193, presented a question distinct from the one involved here. The terms of the grant in the *Gex case* showed that the grantor "granted, bargained, leased, and conveyed certain described lands for the purpose of boxing, working, and using said timber for turpentine purposes," and there was a time-limit feature of the contract within which this right should be exercised. That contract did not convey a fee simple to the trees, as is the case of the contract we are now considering. In the case of *Patterson* v. *Graham,* 164 Pa., 234, 30 Atl., 247, it is held that

"a purchaser may buy growing timber and hold it, just as he might buy and hold land, if he so frame his contract. In such a case he could remove it when he chose, and the vendor would have no right to quicken him by notice."

The practical effect of the bill is to ask the court to write into the deed what it is claimed was the intention of the parties as the legal sequence of the contract made, though the instrument itself is silent as to any such intention. If the conditions sought to be ingrafted on this contract by the complainant are to be put there, it must be done by the court writing into the deed for the benefit of one of the parties a clause which is at variance with his own contract and destructive of the property right of the other party, which property right was bought from, and consideration paid to, the party asking to have same canceled. The interest of the purchaser of this timber under his deed has no less claim to the protection of the law than the interest which the seller retains in the soil. The seller of this timber seeks to have the court do that which is in plain conflict with the rights which he has conveyed. By warranty deed he has sold this timber, received money for it, and now seeks to breach his own warranty by a proceeding in an equity court to cancel his deed, and declares that his vendee did not get what he warranted him he would convey. There is no justice nor equity in the contention. If he desired to limit the title which he conveyed, he should have placed it in the contract. If it had been his purpose to grant him a license merely to enter the land and cut the trees, his contract should have been drawn so as to express this intention. Not having done so, it is not for us, at his instance, to give to this contract an intention which deprives the vendee of his property and is contradictory of the terms of the deed made by the vendor.

There is no law restricting the right of all persons to make contracts to suit themselves, when the contract violates no law. The safety of commercial transactions depends upon this. Should courts undertake, because of improvidence, to set aside

·contracts which are lawful, they would invade personal rights · and disturb and destroy the safety of business transactions. When parties have made lawful contracts in language leaving no doubt as to the intention, there is no ground for any interference by the courts but the contract must be enforced as written. This case might have presented a different question, had the complainant prayed for partition of the property, instead of seeking to have the defendant's deed canceled as a cloud on his title and the right to the trees forfeited. The reporter is ·directed to set out the deed in full in the report of the case.

It follows that the decree of the chancellor, overruling the demurrer, is reversed, demurrer sustained, and the bill dismissed.

*Reversed.*